IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GENE R. CHANCE | § | |
| | § | |
| VS | § | C.A. No. 1:16-cv-00376 |
| | § | JURY |
| E. I. DU PONT DE NEMOURS AND CO. | § | COLLECTIVE ACTION |
| | § | |

**PLAINTIFF'S THIRD AMENDED COLLECTIVE ACTION COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

COMES NOW GENE R. CHANCE, Individually and on Behalf of Those Similarly Situated, and, files this his Third Amended Collective Action Complaint complaining of E. I. DU PONT DE NEMOURS AND CO., ("DuPont") Defendant, and for cause of action would respectfully show this Court as follows:

**I.
JURISDICTION AND VENUE**

1. The case arises under the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 *et seq* (hereinafter "FLSA").

2. This Court has jurisdiction of this case pursuant under Section 16(b) of the FLSA (29 U.S.C. §216(b)), by the provisions of 28 U.S.C. Sections 1331, 1337 and 1367.

3. Plaintiff brings this complaint in the Eastern District of Texas in which he resides and where a substantial amount of the Defendant's conduct, events or omissions occurred giving rise to these causes of action. Accordingly, the court has personal jurisdiction over the parties and venue is proper in this district pursuant to 28 U.S.C. Section 1391 (b).

## II.
## PARTIES AND SERVICE

4. The Plaintiff appears in this action on behalf of himself and all those that are similarly situated, which is all hourly and/or "Salaried Non-Exempt" current and former employees who worked at Defendant's Legacy facilities and who were not paid the correct overtime wages because of Defendant's payroll procedure which procedure failed to calculate employees' overtime based on the "regular rate" of pay prescribed by the Fair Labor Standards Act ("FLSA").

5. Defendant, E. I. DU PONT DE NEMOURS AND CO. is a Foreign For-Profit Corporation doing business in the State of Texas. Defendant has been properly served and is before this Court.

6. Plaintiff, GENE R. CHANCE ("Chance") was employed by Defendant for decades at Defendant's location in Orange County, Texas. He began his employment with Defendant in approximately 1980. Between January 1, 2013 and the filing of this action and thereafter, he was employed as a "Production Operator Technician" at the Sabine River Works Facility in Orange, Texas.

## III.
## FACTUAL BACKGROUND

7. DuPont has 50 facilities throughout the United States known as "Legacy facilities," which employ workers who, like Plaintiff Chance, are non-exempt workers -- either hourly or salaried non-exempt – and who generally work either a day shift or rotating shift. The Sabine River Works Facility where Plaintiff Chance worked is one of the Legacy facilities. Generally, the shifts at each of the Legacy facilities is either 12 hour day shift or 12 hour rotating shifts that rotate between day shift and night shift -- one 48 hour week followed by a 36 hour week. The DuPont shift schedule allows for production

to take place 24 hours a day, 7 days a week, 365/366 days a year using four shifts of employees. By way of illustration, a graphical representation of the so-called "DuPont Shift Schedule" can be found below:



The above grid shows working and non-working days for each team in one repeat cycle. Day 1 usually starts on a Monday but it can be any day of the week. At the end of the cycle, the entire sequence starts over. Color coded blocks represent assigned shifts (working days) while underlines represent non-working days.

- The required shifts and shift lengths are shown in the Shifts column. Shift names, start times, and end times are shown as examples only. They can be changed to match the requirements of your operation.
- The teams required by the plan are shown in the first column. The total working hours for each team over the repeat cycle are shown in the Hours column, assuming one employee per team.
- The last row, Hours, shows the hours worked by all teams in each date range block (leg), assuming one employee per team.

Stated verbally, an employee such as Plaintiff works the following sequence:

- Four shifts of "days" (every "shift" is scheduled to be 12 hours long);

- Seven days off;

- Four shifts of "nights";

- Three days off;

- Three shifts of "days";

- One day off;

- Three shifts of "nights";

- Three days off.

Therefore, in each 28-day (four-week) period, an employee works seven shifts of "days" and seven shifts of "nights." In one of the calendar weeks, an employee is scheduled to work six out of the seven days, including the Sunday of that week; in another, the employee

3

works zero hours. Under the FLSA, DuPont is permitted to characterize this as alternating 48 hour and 36 hour weeks.

8. Until April 1, 2016, all non-exempt employees at each of DuPont's Legacy facilities, including Plaintiff Chance, were paid in accordance with Dupont's payroll procedure known as "MyInfo" which paid overtime wages through a "Scheduled Overtime Allowance" procedure ("SOA"). Absent unscheduled overtime, the SOA procedure paid Plaintiff and all non-exempt employees at DuPont's Legacy facilities a set amount of overtime wages on a recurring basis that was based solely on the employees' "straight time" base rate wages without including any other remuneration the employees were paid -- such as Shift Premium Allowances discussed below -- as required by the FLSA. In short, the SOA procedure followed at all DuPont Legacy facilities violated the FLSA's requirement that overtime wages be based on a "regular rate" of pay as defined by the statute. 29 U.S.C. 207 (a) (1).

9. DuPont instituted the SOA procedure years ago at each of it's 50 legacy facilities, among which include the Sabine River Works Facility where Plaintiff works. However, the SOA procedure failed to comply with the FLSA's mandatory requirement that overtime be based on the employees' "regular rate," which rate includes not only straight time wages but all remuneration for employment which does not fall within one of the seven exclusionary clauses set forth at 29 U.S.C. §207 (e) (1) - (8). *See* 29 U.S.C. § 207 (a) (1); 29 C.F.R. §778.109; *Smiley v. EI DuPont De Nemours*, 839 F.3d 325 (3rd Cir. 2016); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010). DuPont's SOA procedure, which applied at each of the 50 Legacy facilities in the United States, did not calculate the "regular rate" prescribed by the FLSA, and therefore did not pay Plaintiff and other similarly situated workers at any of the Legacy facilities the correct amount of

4

overtime wages. That said, employees at DuPont's Legacy facilities – among whom include Plaintiff Chance – received remuneration that should have been added to the base, straight time rate to calculate the "regular rate" mandated by the FLSA. Two examples of "other remuneration" DuPont failed to incorporate into the calculation of overtime wages include the following:

> a. "Scheduled Shift Premium." This is an amount of extra pay (sometimes called a "shift differential"), paid on a per-hour basis, to employees when they work the night shift, in recognition of the relative undesirability of that shift as compared to day-shift work. Plaintiff Chance, and his similarly situated co-workers at the Sabine River Works facility and all other legacy facilities received a Scheduled Shift Premium that should have been included in the calculation of their overtime.

> b. Scheduled Sunday premium payment. This is a payment (which amounts to double-time) for workers when they work on Sundays, again in recognition of the relative undesirability of Sunday work.

In addition to the above examples of remuneration that DuPont's SOA procedure failed to account for in calculating overtime, other forms of remuneration were identified by DuPont in DuPont's new payroll procedure implemented in April 2016 -- known as the ADP procedure, and RROP for "regular rate of pay" procedure – "RROP"). Specifically, in April 2016, DuPont replaced the MyInfo payroll system with the ADP payroll system and discontinued the SOA procedure for paying overtime. DuPont replaced the SOA procedure with a "regular rate of pay" procedure through which, DuPont expressly noted as follows:

> "The required overtime pay under the FLSA is `1.50 times the employees' "regular rate of pay."… The calculation of the regular rate of pay is sometimes difficult when other types of payments besides cash wages need to be included in determining the regular rate."

DuPont's new RROP procedure identified the following forms of remuneration that should have been included in the employees' "regular rate" of pay and reflected in their overtime wages:

5

      Company designated holidays
      Occupational Illnesses
      Vacation
      Disability
      Military
      Jury
      Civic/political

Prior to April 1, 2016, DuPont was aware of it's obligations under the FLSA to pay overtime wages based on the employees' regular rate of pay, and account for all of the above examples of remuneration and more, but it elected not to do so. The precise remuneration for employees at each of the Legacy facilities, including Plaintiff, are known to DuPont and should have been paid by DuPont.

      10.    DuPont previously sent a Notice with corresponding retroactive payment of overtime wages to Plaintiff and other similarly situated workers who were owed overtime wages due to DuPont's improper calculation of overtime wages through the SOA procedure. Upon information and belief, DuPont's additional payment of wages still did not include payment of all overtime wages owed, including but not limited to encompassing the 3 year window prescribed by the FLSA. Additionally, while DuPont's Notice acknowledged it's failure to properly calculate overtime pay based on the prescribed regular rate, DuPont failed to pay the liquidated damages mandated by the FLSA under 29 U.S.C. § 216.

      11.    Plaintiff is similarly situated to all DuPont non-exempt employees who were paid overtime through DuPont's SOA procedure. The current and former employees similarly situated to Plaintiff are current and former employees of DuPont at each of it's 50 Legacy facilities in the United States. The job titles vary with the common denominator being that all current and former employees were non-exempt – either hourly or salaried non-exempt – who were each and all subject to the illegal SOA procedure and

are still owed overtime wages and liquidated damages under the FLSA.[1] Plaintiff Chance's position and the general day to day activities of his job remained consistent throughout his employment. More importantly, like all other similarly situated employees, he was the victim of DuPont's SOA procedure. During his employment with the Defendant, Plaintiff was covered under the FLSA. Plaintiff Chance's consent to sue is attached hereto as Exhibit "A."

12. As noted above, the Defendant employed additional similarly situated employees all over the United States of America at each of it's 50 legacy facilities located in the United States within the three years preceding the filing of this action through the present. That is, Defendant's practices of not paying the Plaintiff and his Similarly Situated co-workers correctly spanned the three years preceding the filing of this action and possibly through the present. Additionally, from this same group of similarly situated co-workers who were denied all overtime wages due and owing under the FLSA, Defendant also failed to pay the required liquidated damages and remains in breach of that obligation through the present. The Plaintiff brings this action individually and as part of a collective action under the FLSA 29 U.S.C. §216(b) on behalf of other current and former employees of Defendant during the three period prior to filing this lawsuit through the present, who were/are non-exempt employees, and who were not properly paid 1.50 times their "regular rate of pay" prescribed by the FLSA to account for all remuneration, and who were likewise not paid liquidated damages.

---

[1] The various job descriptions include but are not limited to: Operators; Production employees; Technician employees; Maintenance Technicians; and Electrical and Instrument Support (sometimes called "ENCO") personnel.

13. The class members (hereinafter "Class Members") should include the following individuals:

> All current and former hourly or salaried non-exempt employees who worked for Defendant between September 2, 2013 and the present who received a scheduled overtime allowance, including both day shift and night shift. If you previously received a payment from DuPont, you are still entitled to opt into this lawsuit to receive any additional amount of overtime wages and matching amounts of wages payable to you as liquidated damages under the law.

14. The Class Members were and continue to be paid in violation of the overtime calculation rules of the FLSA, and are entitled to recover liquidated damages, and imposition of the 3 year look back period. These employees are similarly situated as Plaintiff Chance and engaged in commerce or in the production of goods for commerce during the employment duties for the Defendant.

15. As described above, Defendant's pay practices had the effect of frequently and repeatedly underpaying Plaintiff and those similarly situated for hours worked in addition to all other liquidated damages, interest, reasonable attorney's fees and costs.

16. Defendant has admitted that its pay practices were not in compliance with the FLSA and has pledged to act in compliance going forward and identified examples of remuneration that should have been included in the employees' "regular rate of pay." See Exhibit "B" hereto. However, Defendant has failed to fully and properly compensate the affected employees. Notably Exhibit "B" states that DuPont paid overtime at .5 times versus 1.5 times which, is a separate violation of the FLSA requirement that overtime be calculated at 1.5 times the regular rate of pay. See 29 U.S.C. § 207(a)(1).

17. Plaintiff reserves the right to seek relief as to any other violations of the FLSA, which might not be immediately apparent in consideration of the complex pay system used by Defendant on its paystubs.

## IV.
## COLLECTIVE ACTION ALLEGATIONS UNDER
## THE FAIR LABOR STANDARDS ACT

18. There is no exemption that excuses the Defendant from paying the overtime hours and proper overtime compensation to the Plaintiff and other employees similarly situated.

19. In support of these Collective Class Action allegations under the FLSA, Plaintiff incorporates all allegations of fact and claims set forth above and below and the exhibits attached hereto. This action is allowed to be a collective action as to claims for all the overtime hours and proper overtime compensation, liquidated damages, interest, reasonable attorney's fees and costs under FLSA. In addition to the Named Plaintiff, many current and former employees of the Defendant are similarly situated with regards to the wage violations as described above and which were caused by Defendant's payroll procedure implemented and followed at each of Defendant's 50 legacy facilities throughout the United States, which payroll system and overtime procedure -- known as the MyInfo system and Scheduled Overtime Allowance procedure -- universally failed to pay all overtime wages owed by failing to calculate the "regular rate of pay" for those nonexempt employees receiving overtime wages under the FLSA, and which violations cover a timeframe exceeding three plus years prior to the filing of this lawsuit. These current and former employees would constitute the Class Members, and would also be entitled to recover liquidated damages, attorney fees, and costs.

20. The Named Plaintiff's experiences are representative of those of the current and former employees which constitute the Class Members, and they will fairly and adequately represent and protect the interest of the proposed class. Named Plaintiff has no interest opposite to those of the other members of the proposed class and Plaintiff's

attorneys are able and willing to conduct this litigation.

21. For purposes of claims brought under the FLSA, the Class Members of similarly situated Plaintiffs would be properly defined as:

> All current and former hourly or salaried non-exempt employees who worked for Defendant between September 2, 2013 and the present who received a scheduled overtime allowance, including both day shift and night shift. If you previously received a payment from DuPont, you are still entitled to opt into this lawsuit to receive any additional amount of overtime wages and matching amounts of wages payable to you as liquidated damages under the law.

Plaintiff reserves the right to modify or update this definition as evidence and information are discovered.

22. The class shall not include the presiding judge, any persons currently employed by the United States Government and working in the offices of or on behalf of the District Clerk for the Eastern District of Texas, or in the office of or on behalf of any judge sitting in the Eastern District of Texas, and any person who become so employed or so work prior to the entry of a Final Judgment in this action.

23. A collective action is the best method for the fair and efficient adjudication of the claims asserted herein, and Named Plaintiff is not aware of any difficulties that are likely to be encountered in the management of this collective action.

24. This action is allowed to be a collective action as to the claims for all the overtime hours and overtime compensation, liquidated damages, interest, reasonable attorney's fees and costs under FLSA. In addition to the Named Plaintiff, many current and former employees of the Defendant are similarly situated with regards to the wage violations as described above, in that they have been refused proper overtime compensation for at least three years prior to the filing of this lawsuit which would constitute the Class Members.

## V.
## **VIOLATIONS OF THE FLSA**

25.     Plaintiff incorporates all allegations of fact and claims set forth above and below and the exhibits attached hereto.  The facts set forth above and evidence will demonstrate that, during the 3 plus years preceding the filing of this lawsuit, Defendant, through it's MyInfo payroll system and SOA procedure, negligently and willfully failed to pay Plaintiffs all overtime wages due and owing.  Specifically, Defendant's MyInfo payroll system and SOA overtime procedure failed to calculate and pay overtime wages at 1.5 times the "regular rate" of pay, as mandated by the FLSA – 29 U.S.C. §207 (a) (1).   It is undisputed that the Defendant did not include all remuneration as required by the FLSA to calculate the regular rate of pay. (eg. Shift Premiums, Company designated holidays, and Sunday premium payments.)   Additionally, according to Exhibit B, Defendant did not apply the correct multiplier and instead calculated the additional overtime wages using ".5" versus "1.5" in calculating overtime pay, which is a separate violation of the FLSA. *See* 29 U.S.C. §207 (a) (1); *Smiley v. EI DuPont De Nemours,* 839 F.3d 325, 330-31 (3rd Cir. 2016):

> …. employers are required to compensate employees for time in excess of forty hours with overtime compensation, which is paid at a rate of one and one-half times the employee's regular rate of pay.
>
> The regular rate at which an employee is paid for "straight time" — or the first forty hours of work in a week — is integral to the issue of overtime payment under the FLSA. The regular rate is determined by way of a calculation. It is a "rate per hour" that "is determined by dividing [the] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. Thus, the regular rate is a readily definable mathematical calculation that is explicitly controlled by the FLSA. *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424-25, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945) ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of

mathematical computation, the result of which is unaffected by any designation of a contrary `regular rate' in the wage contracts."). … [Citations Omitted]

There are two components to the calculation: (1) the dividend, which includes total remuneration minus statutory exclusions; and (2) the divisor, which includes all hours worked. *See* 29 C.F.R. § 778.109.

The FLSA characterizes the compensation that must be included in the dividend of the regular rate calculation broadly. It include[s] *all* remuneration for employment paid to, or on behalf of, the employee" except the exclusions that **are listed in section 207(e)(1)- (8). 29 U.S.C. § 207(e) (emphasis added).** Further, *"[o]nly the statutory exclusions are authorized....* [A]ll remuneration for employment paid which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is [to be] determined." 29 C.F.R. § 778.200(c) (emphasis added). We have recognized that "there are several exceptions to the otherwise all-inclusive rule set forth in section 207(e)," but the statutory exclusions "are narrowly construed, and the employer bears the burden of establishing [that] an exemption [applies]." 331*331 *Minizza v. Stone Container Corp. Corrugated Container Div. E. Plant,* 842 F.2d 1456, 1459 (3d Cir.1988) (internal citations omitted). Thus, although a handful of types of compensation are statutorily excluded from the definition of "all remuneration," all other compensation is included in the regular rate.

*Id. See also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (The FLSA broadly defines "regular rate" as the hourly rate actually paid the employee for "all remuneration for employment." The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.)

26. Defendant negligently and willfully and/or with reckless disregard for its obligations under the FLSA, failed to accurately record the regular rate of pay for Plaintiff and the Class Members. *See* 29 U.S.C. 211 (c); 29 C.F.R. 516.2 (6) (i) As a result Defendant failed to record and include all remuneration in calculating overtime wages due Plaintiff and the Class Members.

27. Defendant was aware of it's obligations under the FLSA to pay Plaintiff and the Class Members overtime at a rate not less than one and one half times the "regular rate" and include all remuneration in the regular rate. However, Defendants knowing disregarded this obligation. As such, Plaintiff's should be able to recover for the prior 3 year period for all overtime wages owed.

28. Plaintiff and the Class Members are entitled to damages representing wages not properly paid, as well as an additional equal amount as liquidated damages resulting from Defendant's violations of the FLSA committed willfully and/or in reckless disregard for the requirements and Plaintiffs' rights under the FLSA. 29 USC 207, 216(b), 255(a). Plaintiff and the Class Members are further entitled to recover their attorneys' fees, expert fees, pre-judgment and post-judgment interest on all damages, and their costs of court.

## VI.
## TOLLING

29. To the extent necessary, Plaintiff pleads that tolling applies to toll limitations back to the filing of this action and/or agreements of the parties..

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    a. For an order certifying this matter as a collective action under the Federal Rules of Civil Procedure, and appointing Named Plaintiff and his attorneys to represent the class;

    b. For an order directing that all collective action members be notified of the pendency of this action and given an opportunity to consent to participation, at the cost of Defendant;

    c. For damages for the full amount of the unpaid overtime wages, as well as an additional equal amount as liquidated damages resulting from the Defendant's willful violation of the FLSA;

13

d.     For damages under the FLSA, Plaintiff prays the Court impose the three (3) limitations period for Defendant willful violations of the FLSA;

e.     For any additional damages, actual, special and incidental, that are recoverable under law as the evidence may show proper;

f.     For all attorney fees mandated by the FLSA;

g.     For all costs and expenses of these proceedings including expert fees as the Court deems appropriate;

h.     For pre-judgment and post-judgment interest at the highest rates allowable by law; and

i.     For other relief, in law or in equity, as to which Plaintiff and Class Members are allowed by law.

Respectfully submitted,

REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000 (phone)
(409) 833-8236 (fax)

By: */s/ John Werner*
      John Werner
      State Bar No. 00789720

Attorney(s) for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this instrument via the USDC Eastern District's CM/ECF system this 8th day of May, 2017.

*/s/ John Werner*
John Werner