UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| GENE R. CHANCE<br><br>Plaintiff,<br><br>vs.<br><br>E. I. DU PONT DE NEMOURS AND COMPANY,<br><br>Defendant. | CASE NO. 1:16-cv-00376 (LEAD CASE)<br><br>CASE NO. 1:17-cv-00333 (MEMBER CASE)<br><br>CASE NO. 1:18-cv-402 (MEMBER CASE) |

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs, Gene R. Chance, Gerard M. Dunne, and Kenneth Cook, both individually and on behalf of all members of the conditionally-certified collective action under the Fair Labor Standards Act ("FLSA") and, for settlement purposes only, Rule 23 state law classes under New York, Illinois, Kentucky and California law (collectively "Plaintiffs") and Defendant, E.I. DuPont de Nemours and Company and any of its parents and subsidiaries (collectively "DuPont" or "Defendant"), file this Joint Motion for Final Approval of the Parties' Settlement Agreement. Pursuant' to the Court's Order on Preliminary Approval (Dkt. 135), the Plaintiffs contemporaneously file an Unopposed Motion for Approval of Attorneys' Fees and Costs.

**I.    INTRODUCTION AND BACKGROUND**

On September 2, 2016, Plaintiff Gene Chance filed a putative collective action on behalf of himself and those similarly situated alleging that Plaintiffs were not paid overtime to which they were entitled in violation of the Fair Labor Standards Act ("FLSA"). Plaintiffs claimed that DuPont failed to include some forms of remuneration such as shift premiums and meal allowance payments into Plaintiffs' "regular rate of pay" for purposes of calculating overtime. On June 2,

2017, Plaintiff Kenneth Cook filed a similar case in the Middle District of Tennessee on behalf of a putative collective under the FLSA. On August 3, 2017, the *Cook* court granted DuPont's Motion to Transfer the case to this Court. On October 10, 2017, this Court consolidated the *Cook* case with the *Chance* case. Doc. No. 55. On July 7, 2017, Plaintiff Gerald Dunne filed a case in the Western District of New York asserting similar claims. On August 14, 2018, the Western District of New York transferred the *Dunne* case to this Court and on August 15, 2018, this Court opened the *Dunne* case as Case No. 1:18-cv-0402.

On August 9, 2018, the Parties participated in a mediation in New York City, New York before an experienced wage and hour mediator, Ruth Raisfeld, http://www.rdradr.com/ServMed.htm, in an attempt to resolve the *Chance, Cook* and *Dunne* cases. Within the context of mediation, the Parties exchanged voluminous electronic and hardcopy payroll records and timesheets. Using this information, the Parties created various damage models that they shared with each other prior to and during the mediation. The exchange of this information allowed the Parties to form a basis for productive negotiations.

At mediation, the Parties reached agreement on a settlement that represents a compromise of all claims at issue and agreed to numerous terms regarding this global settlement of Dupont's hourly workers. Opt-in Plaintiffs from all three cases were present, either in person or by telephone, at the mediation and they all agreed upon the settlement terms. Following the mediation, the Parties executed a formal Settlement Agreement and exhibits, including the settlement notice documents, the settlement notice procedures, and payment schedule, which were previously filed with the Court. Dkt. 133.1.

During the course of these three collective and class actions, the Parties conducted formal document exchange and depositions in the *Chance* case and informal discovery in all cases,

investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in these collective and class actions. Based upon Class Counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Class Counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the settlement reached by the Parties, Class Counsel has concluded that a settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs.

Without any admission of liability, DuPont desires to compromise and settle these collective and class actions and all claims on or before April 1, 2016, by Plaintiffs for unpaid overtime wages, underpaid wages, unpaid wages, liquidated or other damages, penalties, restitution, attorneys' fees, costs, and interest, including but not limited to wage and hour claims under the FLSA as well as Illinois, California, Kentucky and New York state law, specifically, California Labor Code §§ 201, 202, 203, 204, 215, 216, 226, 226.6, 510, 1194, 1198, and 1199, California Industrial Wage Commission Wage Order No. 7-80, California Business and Professional Code §17200, *et seq*, the Illinois Minimum Wage Law (820 ILCS § 105/1 *et seq*.) and Kentucky Rev. Stat. Ann. §337.25 *et seq*; Amended Complaint, Dkt. 132. Defendant and its counsel believe that the settlement represents a fair and reasonable compromise of the disputed factual and legal issues in this case.

## II.    SETTLEMENT TERMS

As set forth in detail in the Settlement Agreement and Release (Dkt. 133.1), the Parties reached a settlement of the claims of the Plaintiffs, FLSA Opt-in Plaintiffs and Putative State law Class Members. The Agreement effectively provides for two different settlements.

The first is for the 2,709 individuals that filed consents under the FLSA to participate in

the *Chance, Cook* and *Dunne* cases. DuPont has agreed to pay up to $1,450,782.72 to settle the claims of the FLSA Opt-in Plaintiffs. Each FLSA Opt-in Plaintiff's pro rata share of the $1,450,782.72 was calculated based on the number of weeks each worked during each Opt-In Plaintiff's relevant time period, which is three years back from the date each individual filed their consent to participate through April 1, 2016, the day DuPont stopped using MyInfo to pay Plaintiffs. Because the Opt-Ins have already filed consents to participate, the Claims Administrator will simply issue checks to these individuals when the agreement becomes final. Because DuPont already made approximately $1,570,000 in voluntary wage backpayments to non-exempt employees in 2016, all of these new amounts are considered 1099 liquidated damages. In exchange for these payments, the FLSA Opt-In Plaintiffs have agreed to release DuPont from any and all wage and hour claims for the period from three years prior to the date of each opt-in's consent form through April 1, 2016, or for opt-ins that work(ed) for Defendant in New York, Kentucky, California, or Illinois for the Relevant Time Period for the applicable state limitations period through April 1, 2016, whichever is longer, and Dupont has agreed that it will not retaliate nor seek any recoupment of any payments related to the calculation of the plaintiffs' regular rate of pay during the relevant period, nor any recoupment of payments made under this agreement.

The second settlement is for individuals that were paid through MyInfo who worked at any of DuPont's Legacy facilities located in Illinois, California, Kentucky or New York during the Relevant Time Periods in each state that did not opt into any of the three FLSA cases. The Claims Administrator issued notice to these individuals and advised them of their rights to participate in the settlement, opt-out or object to the settlement. Individuals that chose to participate will receive a pro-rata share of a $240,000 Settlement Fund. Each individual's pro rata share of the $240,000 was calculated based on the number of weeks each worked during the Relevant Time Periods

applicable in each state. Half of the amounts in the $240,000 portion of the Class Member Fund represent alleged back wages while the other half will represent 1099 liquidated damages and other penalties. Any amount of this fund not claimed shall remain in DuPont's possession. In exchange, all members of this class that do not opt out or object to the settlement will release DuPont from all wage and hour claims under California, Illinois, Kentucky and New York state or local law, including but not limited to claims under the New York Minimum Wage Act and New York Labor Law (N.Y. Lab. Law. §§ 650 et. seq. and 12 N.Y.C.C.R § 142), California Labor Code §§ 201, 202, 203, 204, 215, 216, 226, 226.6, 510, 1194, 1198, and 1199, California Industrial Wage Commission Wage Order No. 7-80, California Business and Professional Code §17200, *et seq*, the Illinois Minimum Wage Law (820 ILCS § 105/1 *et seq*.), and Kentucky Rev. Stat. Ann. §337.25 *et seq*. for the relevant time periods prior to April 1, 2016.

In addition to these funds, DuPont has agreed to pay Service Awards to the six individuals that substantially participated in the prosecution of the *Chance*, *Cook* and *Dunne* cases. The Service Awards are not to exceed a total of $60,000. These Service Awards are separate and in addition to the Opt-In Fund and the Rule 23 Fund.

Finally, DuPont agrees to pay $974,217.28 to Plaintiffs' counsel for reasonable attorneys' fees and costs. Plaintiffs file contemporaneous with this motion a motion seeking approval of these fees and costs, which DuPont has agreed not to oppose. This amount includes $160,000 in attorneys' fees and costs related to the state law claims of the non-opt in Class Members.

### III. PRELIMINARY APPROVAL ORDER AND NOTICE TO OPT-IN PLAINTIFFS AND CLASS MEMEBRS

On November 28, 2018, the Court entered an order holding that "the court preliminarily finds that the settlement is fair and reasonable to all parties, reflects an arm's length negotiation and compromise of disputed claims, and should be approved." Dkt. 135. The Court certified for

settlement purposes Rule 23 settlement classes, and ordered the parties, through the Claims Administrator, to issue the Court-approved Notice to putative Class Members. Notice was issued on December 10, 2018. Declaration of Jennifer M. Keough, CEO of JND Legal Administration ("Keough Decl.") ¶ 5. Based on information provided by the Claims Administrator, 189 State Law Class Members timely submitted claim forms in this matter, claiming $70,069.08 of the Rule 23 settlement fund. Keough Decl. ¶ 9. No State Law Class members filed objections, and four opted-out. *Id.*, ¶¶ 10-13.

Additionally, each FLSA Opt-In Plaintiff received a letter from Plaintiffs' counsel explaining the terms of the agreement, the total amounts apportioned under the agreement (including attorneys' fees and costs) and providing each FLSA Opt-In Plaintiff with the opportunity to verify their weeks of eligibility under the agreement. Each Opt-In Plaintiff was notified of the date and time of the Final Fairness Hearing. Notably, there are no unresolved disputes regarding the settlement allocation for FLSA Opt-In Plaintiffs.

As set forth herein, the proposed settlement is the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information, and engaging in substantial negotiations over several months. The terms of the settlement are reasonable and appropriate and fair to all parties involved, and the response of the FLSA Opt-In Plaintiffs and State Law Class Members has been overwhelmingly positive. Accordingly, the parties jointly request that the Court enter an order approving the settlement as final.

## IV. ARGUMENT

The Parties seek final approval of their agreed settlement under the FLSA and Rule 23. The settlement represents a fair and reasonable compromise of the bona fide legal and factual

disputes in this case.

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).

"FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b)." *Villeda v. Landry's Rests., Inc.,* No. H–08–2287, 2009 WL 3233405, at *1 (S.D.Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir.1982)). "If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda,* 2009 WL 3233405, at *1 (quoting *Lynn's,* 679 F.2d at 1354). When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355.

Approval is also required for Rule 23 settlements. Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). The typical process for approval of class action settlements is described in the *Manual*, §§ 21.632-.634. The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3. A "formal fairness hearing," or final approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the

fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding Class Members' procedural due process rights and enabling the Court to fulfill its role as the guardian of the Class Members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985)). Rule 23(e)(2) states that a court may approve a settlement proposal that would bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

Six factors guide the Court's review of a decision to approve a class action settlement agreement: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Katrina Canal Breaches Litig. v. Bd. of Comm'rs*, 628 F.3d 185, 194-95 (5th Cir. 2010); *Cole v. Collier*, No. 4:14-cv-1698, 2018 U.S. Dist. LEXIS 97110, at *16 (S.D. Tex. June 8, 2018) When a class settlement is reached through arm's-length negotiations after meaningful discovery, a "presumption of fairness, adequacy, and reasonableness may attach." *Wal-Mart Stores*, 396 F.3d at 116; 4 Newberg on Class Actions § 13:45 (5th ed.). Judicial and public policy favor compromise of class actions. *Wal-Mart Stores*, 396 F.3d at 116.

    A. **BONE FIDE FACTUAL AND LEGAL DISPUTES EXIST**

Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697,

706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).[1] Due to this unequal bargaining power, Courts must ensure that a settlement agreement, following a FLSA claim, must be the product of a bone fide dispute.

In the instant case, the Parties fiercely contested the claims and defenses asserted. Plaintiffs alleged that DuPont's non-exempt employees who worked at the Company's Legacy Facilities and were paid using the MyInfo system were not paid all of their overtime due because DuPont failed to include all required forms of remuneration in the "regular rate" of pay. DuPont disputed that all of the forms of payment Plaintiffs claimed were required to be included were in fact required and also contended that Plaintiffs had already been paid the backpay due to them when the Company made voluntary backpayments in 2016.

The Parties further disagreed on whether Plaintiffs could satisfy their burden to demonstrate that Defendants acted willfully, which in turn affects whether Plaintiffs' recovery would be limited to two (2) years or three (3) years under the FLSA. *See* 29 U.S.C. § 255. Plaintiffs also contend that DuPont would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. DuPont maintained that, at all times, it acted in good faith, and damages (if any) should be recovered only for a two (2) year period.

Finally, the Parties disputed whether DuPont was entitled to take as credits against the backpay and/or liquidated damages owed the paid 30-minute breaks that certain Plaintiffs and

---

[1] *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717. 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

Class Members received throughout their employment. Not only was this issue disputed, it is legally unresolved in the Fifth Circuit and there is a circuit-split amongst the other circuits on whether such a "credit" is available.

As reflected by all of the filings, arguments, documentation, hearings, discovery, and motions in the instant suit, the current settlement before the Court is the result of a bone fide dispute. Furthermore, it should be noted that this case concerned claims that Dupont miscalculated the regular rate of pay at which overtime was paid because Dupont allegedly failed to include certain shift differentials in the overtime pay it paid to the plaintiffs. These cases involve relatively small amounts of damages because the damages arise from the difference between the rate at which the employee was paid and the rate that he or she should have been paid under the FLSA if the premiums had been included in the regular rate. The U.S. Department of Labor formula set forth at 29 C.F.R. § 778.120(a)(2) to calculate such damages in workweeks that an employee works over 40 hours a week reflects why these damages on a weekly basis are not large, but the method of calculating them can be difficult, particularly if pay records must be reconstructed.

### B. FAIR AND REASONABLE SETTLEMENT

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.,* 2010 WL 1688793, at *1 (M.D.La.2010) (citing *Camp v. Progressive Corp.,* 2004 WL 2149079, at *5 (E.D.La.2004)). As well, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending similar claims for many years.[2] Plaintiffs' counsel has had considerable

---

[2] Plaintiffs' counsel has served as lead counsel in numerous of large-scale wage and hour

experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. All counsel believe this settlement represents a fair and reasonable compromise of the disputed legal and factual issues in this case. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F.Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

After they reached an agreement on the monetary amounts for the settlement, the Parties engaged in further negotiations concerning the specific terms of the written settlement document. Further, it is important to note that the named Plaintiffs in the *Chance*, *Cook* and *Dunne* cases, on behalf of their coworkers, all deem this settlement fair and reasonable. The Named Plaintiffs took an active role in this litigation, staying informed on its status.

### C. THE RULE 23(E)(2) FACTORS ALSO FAVOR APPROVAL

The six factors that the Fifth Circuit has determined guide the Court's review of a decision

---

class/collective actions. Plaintiffs' counsel, with the law firm of Woodley & McGillivary LLP, specializes in representing employees in litigating nation-wide FLSA collective actions in large multi-plaintiff actions, and class actions under state law, and the firm has participated in the successful litigation of several hundred FLSA lawsuits on behalf of employees in various proceedings throughout the country. Similarly, the law firm of Reaud, Morgan & Quinn successfully represents workers throughout Texas in wage and hour and FLSA claims. Defendant is represented by experienced employment litigation attorneys at Jackson Lewis, P.C. who has represented numerous defendants, including large private companies, in wage and hour cases.

to approve a Rule 23 class action settlement agreement under Rule 23(e)(2) strongly favor approval. First, courts have found there is a presumption in favor of finding no fraud or collusion where both parties were represented by counsel. *Black v. DMNO, LLC*, 2018 U.S. Dist. LEXIS 126519, *6 (E.D. La. July 30, 2018). Here, all of the parties were independently represented by counsel. Plaintiffs were represented by multiple sets of experienced counsel in the respective *Chance, Cook* and *Dunne* cases. John Werner, Esq. and Mark Frasher, Esq. of Reaud, Morgan & Quinn, L.L.P. represented Gene Chance and the conditionally-certified FLSA collective in the initial case that Chance brought in this Court. Gregory McGillivary, Esq. and Diana Nobile, Esq. of Woodley & McGillivary LLP represented the respective Plaintiffs and putative classes in the *Cook* and *Dunne* cases that were transferred to this Court and consolidated with the *Chance* case. Defendant was represented by Eric Magnus, Esq., Justin R. Barnes and Joseph Galagaza, Esq. of Jackson Lewis P.C. and M.C. Carrington of Mehaffy Weber. All counsel involved have experience in litigating claims under both the FLSA and state law wage and hour cases, including claims for overtime compensation and "regular rate" cases. Each counsel was obligated to and did vigorously represent their clients' rights.

The complexity, expense, and length of future litigation also militate in favor of this settlement. Plaintiffs and Defendant continue to disagree over the merits of the claims asserted by Plaintiff. As noted above, the Parties disagree about whether all of the forms of payment Plaintiffs claimed were required to be included in the "regular rate" were in fact required. The Parties also strongly disagree about whether Plaintiffs had already been paid the backpay due to them when the Company made voluntary backpayments in 2016. If the Parties continued to litigate this matter, there would have been disputes over decertification of the FLSA collective, amending the Complaint to add the state law claims the Parties have agreed to settle, and Rule 23 certification

of both these claims and the New York Labor Law claims already pending in the *Dunne* case. This settlement, therefore, is a reasonable means for both Parties to minimize future risks and litigation costs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties took written discovery in the *Chance* case, including depositions, regarding the pay practices at issue. In preparation for mediation, DuPont produced a massive amount of pay data and both Parties prepared independent expert damages analyses that were used to work out the settlement agreement at mediation. In agreeing upon the proposed settlement, the Parties had sufficient information and had conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

The range of possible recovery due to each FLSA Opt-In Plaintiff and putative class member was uncertain and hotly disputed due in large part to Plaintiffs' contentions that DuPont's 2016 backpayments were insufficient, incomplete and did not account for available statutory penalties. Moreover, whether the conditionally-certified *Chance* case would have survived a motion for decertification, whether the New York state law claims in *Dunne* would have been certified, and whether this Court would have permitted amending the Complaint to add additional state law claims are all issues that remained in question. Even if Plaintiffs succeeded on the merits of their claims and survived all of these certification issues, which would require substantial additional time and exercise of resources by both Parties, the exact amount of her recovery, if any, is uncertain. The "probability of success" factor therefore weighs significantly in favor of the compromise settlement.

The proposed settlement amounts are within the range of possible recovery and are fair given the uncertainly of the damages that Plaintiffs would recover. The Parties' respective

13

damages models varied widely. According to Defendant's damages analysis, the amount owed to the FLSA opt-ins in liquidated damages was $94,114.02 assuming DuPont is entitled to credits for the 30-minute paid breaks it paid to 12-hour Operator employees. Defendant also calculated that the unpaid backpay and liquidated damages for the non-Opt-ins in California, Kentucky, Maryland, Illinois and New York for these states' longer statutes of limitations was $226,181.20. Defendant premised its FLSA and state law damages analyses on the assumption that DuPont already made all of the backpayments Plaintiffs were entitled to in 2006. Plaintiffs on the other hand presented DuPont with a damages analysis in advance of mediation that showed $3,364,000 in backpay and an equivalent amount in liquidated damages. Accordingly, the $1,750,782.72 in the respective FLSA and Rule 23 settlement funds and the incentive awards are well within the range of possible recovery.

For all of these reasons, in the opinions of all parties' counsel, the class representatives in the *Chance*, *Cook* and *Dunne* cases and the putative Rule 23 class members, the proposed settlement represents a favorable outcome for Plaintiffs.

### D. THE SERVICE AWARDS ARE REASONABLE

Service awards to participating plaintiffs are permissible where they are "fair and reasonable." *Halleen v. Belk, Inc.*, No. 4:16-CV-00055-ALM, 2018 U.S. Dist. LEXIS 214015, at *8 (E.D. Tex. Dec. 20, 2018). Courts have granted service awards upwards of $10,000 per plaintiff where participating plaintiffs "were extensively involved with Plaintiffs' counsel in evaluating their claims, providing documents, attending extensive telephone and video conferences, and engaging in continuous communications with Plaintiffs' counsel," and were successful in increasing "the value of the total settlement for the entire class." *Shaw v. Cas, Inc.*, No. 5:17-cv-142, 2018 U.S. Dist. LEXIS 136394, at *12-13 (S.D. Tex. Jan. 31, 2018); *see also Camp v.*

*Progressive Corp.*, CIV.A. 01-2680, 2004 U.S. Dist. LEXIS 19172, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (awarding up to $10,000 incentive payments to class representatives); *Purdie v. Ace Cash Express, Inc.*, Civil Action No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *24-25 (N.D. Tex. Dec. 11, 2003) (same); *Carrabba v. Randalls Food Markets, Inc.*, 191 F. Supp.2d 815, 835 (N.D. Tex. 2002) (recognizing practice of awarding incentive awards).

Here, the Settlement Agreement provides that each Named Plaintiff (Gene Chance, Kenneth Cook, and Gerard Dunne) and the Plaintiffs who, in addition to the Named Plaintiffs also participated in informal discovery, motions for class and conditional certification, and mediation (James Cahoon, Margaret Manning, and George Willis), participated substantially in this litigation. These Plaintiffs were extensively involved with Plaintiffs' counsel in providing documentation and information regarding the claims at issues, participating in numerous telephone conferences with Plaintiffs' counsel, preparing documentation for class and collective certification briefing, preparing for mediation, and participating in mediation in person in New York City, New York and by telephone. Under these circumstances, the Service Awards requested are reasonable.

### E. CONCLUSION

The Parties hereby request that the Court enter an order approving the parties' settlement, including all of the terms set forth in the settlement agreement, as fair and reasonable.

Dated: February 12, 2019Respectfully submitted,

/s/ Gregory K. McGillivary
Gregory K. McGillivary
Diana J. Nobile
William Li
WOODLEY & McGILLIVARY LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@wmlaborlaw.com

djn@wmlaborlaw.com
wwl@wmlaborlaw.com

John Werner
Mark Frasher
REAUD, MORGAN & QUINN, L.L.P.
801 Laurel Street
P. O. Box 26005
Beaumont, Texas 77720-6005
(409) 838-1000 (phone)

*Attorneys for Plaintiffs*


 /s/ Eric R. Magnus
Eric R. Magnus
Jackson Lewis P.C.
1155 Peachtree Street NE, Suite 1000
Atlanta, GA 30309-3600
(404) 525-8200
eric.magnus@jacksonlewis.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic mail by the Clerk of the Court via the CM/ECF system on February 12, 2019.

Respectfully Submitted,

/s/ Gregory K. McGillivary
Gregory K. McGillivary